**REVERSE and REMAND; and Opinion Filed September 15, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-17-00428-CV

_____

### IN THE INTEREST OF K.B., A CHILD

On Appeal from the 304th Judicial District Court
Dallas County, Texas
Trial Court Cause No. JC-16-00365-W

## MEMORANDUM OPINION

Before Justices Fillmore, Whitehill, and Boatright
Opinion by Justice Fillmore

In this accelerated appeal, Father challenges the trial court's order terminating his parental rights to his daughter, K.B., asserting he received ineffective assistance of counsel and the evidence is legally and factually insufficient to support the trial court's findings Father committed two of the statutory grounds for termination, termination of Father's parental rights was in K.B.'s best interest, and the Texas Department of Family and Protective Services (the Department) should be appointed K.B.'s managing conservator. Because Father established he received ineffective assistance of counsel when his appointed attorney failed to appear at trial, we reverse the trial court's order of termination and remand this case to the trial court for further proceedings.

### Background

Following K.B.'s birth on March 23, 2016, the hospital notified the Department that K.B.'s urine tested positive for marijuana. The Department conducted an investigation, which

included interviews of Father and of K.B.'s mother. After the Department determined K.B. should not be released from the hospital in either Father's or Mother's care, K.B. was released in the care of Mother's aunt. The aunt was unable to locate childcare for K.B. while the aunt was working and decided to relinquish custody of K.B. to the Department. On April 7, 2016, the Department filed a suit affecting the parent-child relationship in which it sought temporary and permanent managing conservatorship of K.B. and the termination of Father's and Mother's parental rights. The following day, the trial court granted the Department temporary managing conservatorship of K.B.

On April 20, 2016, Father completed a financial statement indicating his monthly income was approximately equivalent to his monthly expenses. Although the order is not in the record, the trial court appointed an attorney to represent Father. The attorney appeared for Father at a hearing on April 20, 2016, and filed an answer on Father's behalf on April 21, 2016.

The trial court signed temporary orders on April 20, 2016, requiring Father to participate in individual counseling which included anger management and in "drug/alcohol" counseling, to complete a parenting class, and to submit to random drug testing within twenty-four hours of request by the Department. Father completed the counseling and the parenting class, but refused to submit to the requested drug testing. On December 1, 2016, K.B.'s attorney ad litem filed a motion requesting that Father be required to submit to a "nail bed drug test," because he claimed to be unable to submit to a hair follicle test. On January 5, 2017, Father agreed to submit to a hair follicle test that day before 5:00 p.m.

The case was set for jury trial on February 6, 2017, but did not go to trial on that date. Although the record does not contain an order setting a new trial date and does not reflect how the parties were informed of the new trial date, the case was reset for March 27, 2017.[1] On

---

[1] Father has not complained on appeal that he did not receive notice of the March 27, 2017 trial setting.

February 9, 2017, the Department issued a subpoena requiring Father's wife to appear at trial at 8:30 a.m. on March 27, 2017. Father's wife was served with the subpoena on February 15, 2017. On the day of trial, the Department filed a motion for continuance or, in the alternative, for writ of attachment on the ground Father's wife had sent an email to the Department's attorney the previous day indicating her child was sick and she would not attend trial.

Neither Father nor his attorney appeared at trial on March 27, 2017. Evidently believing the trial court was considering the Department's motion for continuance, the Department's attorney called only Sh'Tonia Edmond, the Child Protective Services (CPS) supervisor, and Ruth Holland, the "CASA supervisor,"[2] to briefly testify.[3] Edmond testified that, although she was now the supervisor, she had initially been the investigator in the case. K.B. came to CPS's attention due to concerns about drug use by Father and Mother, and Edmond understood K.B. was currently in foster care. Edmond affirmed Father "committed the behavior that would constitute (d) and (e) grounds." She affirmed Father's and Mother's drug use meant:

> [T]hey had knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical and emotional well being [sic] of the child pursuant to Section [161.001(b)(1)(D)] of the Texas Family Code and engaged in conduct and knowingly placed the child with persons who engaged in conduct which endangered the physical and emotional well being [sic] of the child pursuant to Section [161.001(b)(1)(E)] of the Texas Family Code.

Finally, Edmond affirmed the trial court granted the motion "to put the child into care" because K.B. was in immediate and continuing danger.

Holland testified her "advocate" was out of town, but had "faithfully and regularly" visited K.B. and had "been very pleased with her placement; doing very well." Holland understood Father had not "been most forthright" with CPS. Holland also understood Father was

---

[2] "A CASA volunteer, or Texas Court Appointed Special Advocate, can be appointed to serve as guardian ad litem or a volunteer advocate for the child under Family Code section 107.031 in termination suits." *In re K.M.L.*, 443 S.W.3d 101, 106 n.2 (Tex. 2014).

[3] The reporter's record of the trial is only twelve pages in length.

married and had children with his current wife. Holland agreed Father had "been reluctant to make a decision between his legal family and the family he has started" with Mother. Although Holland had never spoken with Father's current wife, Holland agreed that Father's wife would be a necessary witness "if this were to go to trial today or any time in the future."

It was Holland's understanding the Department did not know where Father worked or what type of employment he had. Holland also understood the Department did not know where Mother's other children were because Mother had also not been "forthright." Finally, it was Holland's understanding Mother had not passed a drug test and Father had taken one drug test and failed that test. Holland believed it was in K.B.'s best interest for Father's and Mother's parental rights to be terminated and for the Department to be appointed K.B.'s permanent managing conservator.

The Department's attorney indicated that was "all of the evidence we have to present at this time, and for the purposes of this hearing[,] we rest." The trial court, however, treated the hearing as a trial following default and asked K.B.'s attorney ad litem whether "this is in the best interest of the child." K.B.'s attorney ad litem responded affirmatively. As relevant to this appeal, the trial court found Father "committed the conduct as defined" in section 161.001(b)(1)(D) and (E) of the family code and that termination of the parent-child relationship between Father and K.B. was in K.B.'s best interest. The trial court named the Department as K.B.'s permanent managing conservator.

**Legal Sufficiency of the Evidence to Support Termination**

We first address issues that would require rendition and then, if necessary, consider issues that would result in remand. *Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 201–02 (Tex. 2003) (concluding appellate court, prior to ordering remand, should consider issues that would result in rendition); *In re S.R.*, 452 S.W.3d 351, 359 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (applying rule in parental termination appeal and first addressing legal

–4–

sufficiency challenges); *see also* TEX. R. APP. P. 43.3. A meritorious complaint the evidence is legally insufficient to support an order terminating a parent's rights to his child generally requires rendition of judgment in favor of the parent. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Therefore, we will first consider Father's complaints in his second and fourth issues that the evidence is legally insufficient to support the trial court's findings (1) Father committed conduct that violated sections 161.001(b)(1)(D) and (E) of the family code, and (2) termination of Father's parental rights was in K.B.'s best interest.[4]

### *Standard of Review*

Because the fundamental liberty interest of a parent in the care, custody, and control of his child is one of constitutional dimensions, *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000), involuntary parental termination proceedings must be strictly scrutinized. *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014); *see also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).[5] In parental termination cases, due process requires the petitioner to justify termination by clear and convincing evidence (1) the parent has committed one of the grounds for involuntary termination as listed in section 161.001(b)(1) of the family code, and (2) terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2016); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought

---

[4] We recognize the only relief requested by Father in the prayer in his appellate brief was that the case be reversed and remanded for new trial, *see* TEX. R. APP. P. 38.1(j) (appellant's brief "must contain a short conclusion that clearly states the nature of the relief sought"), and that we may not generally grant relief not requested, *see Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 392 (Tex. 2011) ("Generally, a party is not entitled to relief it does not request."); *Stevens v. Nat'l Educ. Ctrs., Inc.*, 11 S.W.3d 185, 186 (Tex. 2000) (per curiam) (assuming error in jury charge, but concluding it could not remand for new trial because appellant prayed only for rendition of judgment); *W. End API, Ltd. v. Rothpletz*, 732 S.W.2d 371, 374 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) ("What can be better established than the proposition that relief that has not been prayed [for] cannot be granted?"). However, under appropriate circumstances, this Court has the authority to render the judgment the trial court should have rendered. TEX. R. APP. P. 43.3; *Jakab v. Gran Villa Townhouses Homeowners Ass'n, Inc.*, 149 S.W.3d 863, 870 n.7 (Tex. App.—Dallas 2004, no pet.) (concluding appellate court had authority to modify and render judgment even though party had prayed only for a new trial). Although not specifically included in his prayer for relief, Father recognized in his brief that, if the evidence is legally insufficient to support the trial court's order of termination, he would be entitled to reversal of the order and rendition of judgment in his favor. On this record, we conclude Father has sufficiently addressed the appropriate relief for a meritorious complaint that the evidence is legally insufficient to support the trial court's order.

[5] However, parental rights are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right."); *see also In re A.B.* 437 S.W.3d 498, 503 (Tex. 2014).

to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *see also In re E.N.C.*, 384 S.W.3d at 802.

When the legal sufficiency of the evidence is challenged in a case involving the termination of parental rights, we look at all the evidence in the light most favorable to the trial court's finding to determine whether a reasonable factfinder could form a firm belief or conviction that the finding is true. *In re E.N.C.*, 384 S.W.3d at 802 (citing *in re J.F.C.*, 96 S.W.3d at 266). Giving deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, we assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* This does not mean we must disregard all evidence that does not support the finding. *Id.* If, after conducting a review of the record evidence, we determine no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude the evidence is legally insufficient. *Id.* If the evidence is legally insufficient, rendition of judgment in favor of the parent would generally be required. *In re J.F.C.*, 96 S.W.3d at 266.

*Statutory Grounds for Termination*

The trial court found Father knowingly placed or allowed K.B. to remain in conditions or surroundings which endangered K.B.'s physical or emotional well-being, *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), and engaged in conduct or knowingly placed K.B. with persons who engaged in conduct which endangered K.B.'s physical or emotional well-being, *see id.* § 161.001(b)(1)(E). We first consider whether there was legally sufficient evidence to support the trial court's finding Father committed conduct that violated section 106.001(b)(1)(E) of the family code.

"In considering whether the evidence is legally sufficient to support a finding of endangerment, we must determine whether there was 'some evidence of endangerment on which

–6–

a reasonable factfinder could have formed a firm belief or conviction of endangerment.'" *In re E.N.C.*, 384 S.W.3d at 803 (quoting *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009)). Under section 161.001(b)(1)(E), "'[t]o endanger' means to expose a child to loss or injury or to jeopardize a child's emotional or physical health." *Jordan v. Dossey*, 325 S.W.3d 700, 723 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *see also In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). The term "means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *In re E.N.C.*, 384 S.W.3d at 803. However, the endangering conduct need not be directed at the child, *id.*, and it is not necessary that the child actually suffers injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Endangerment may be inferred from parental misconduct alone. *Id.*; *D.M. v. Tex. Dep't of Family & Protective Servs.*, No. 03-17-00137-CV, 2017 WL 2628949, at *2 (Tex. App.—Austin June 13, 2017, no pet.) (mem. op.). The evidence must show the endangerment was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re A.C.M.*, No. 05-15-01069-CV, 2016 WL 692827, at *4 (Tex. App.—Dallas Feb. 22, 2016, no pet.) (mem. op.). We examine the parent's conduct both before and after the child's birth, *In re J.O.A.*, 283 S.W.3d at 345, and before and after removal from the home, *In re S.R.*, 452 S.W.3d at 360. "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In re J.O.A.*, 283 S.W.3d at 345; *see also In re S.M.G.*, No. 01-17-00056-CV, 2017 WL 2806332, at *4 (Tex. App.—Houston [1st Dist.] June 29, 2017, no pet. h.) (mem. op.).

The evidence at trial established K.B. was placed into the Department's care due to concerns regarding drug use by Father and Mother. Further, Father failed to comply with requests that he submit to drug testing during the course of the proceedings, and the trial court could have inferred from this refusal that Father would have tested positive for controlled substances. *See D.M.*, 2017 WL 2628949, at *3 (citing *In re C.A.B.*, 289 S.W.3d 874, 885 (Tex.

App.—Houston [14th Dist.] 2009, no pet.)). After K.B.'s attorney ad litem filed a motion seeking to compel Father to submit to a drug test, Father submitted to a drug test approximately two months before trial, and failed that test. Because the consistent use of illegal drugs exposes a child to the possibility the parent may be impaired or imprisoned, evidence of the prolonged and continued use of illegal drugs is evidence that supports a trial court's finding of endangerment under section 161.001(b)(1)(E). *In re J.O.A.*, 283 S.W.3d at 345–46; *D.M.*, 2017 WL 2628949, at *2. Further, continued use of illegal drugs in the face of the threat of a parent's loss of his parental rights is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature, endangers the child's well-being. *In re J.O.*, No. 09-16-00485-CV, 2017 WL 2373588, at *2 (Tex. App.—Beaumont, June 1, 2017, no pet. h.) (mem. op.). Finally, Edmonds testified Father's drug use was conduct that violated section 161.001(b)(1)(E) of the family code. *See In re S.N., Jr.*, No. 05-16-01010-CV, 2017 WL 2334241, at *3 (Tex. App.— Dallas May 30, 2017, pet. denied) (mem. op. nunc pro tunc) (witness's testimony parent violated section 161.001(b)(1)(O) of family code was statement of fact that could support termination of parental rights). We conclude there was sufficient evidence from which the trial court could have formed a firm belief or conviction that Father committed conduct that endangered K.B.'s physical or emotional well-being, in violation of section 161.001(b)(1)(E) of the family code. *See In re J.O.A.*, 283 S.W.3d at 345; *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253–54 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (en banc).[6]

*Best Interest*

A judicial determination of the "best interest" of a child is "not dependent upon, or equivalent to, a finding that the child has been harmed by abuse or neglect or is in danger of such

___

[6] Because we conclude there is legally sufficient evidence to support the trial court's finding Father committed conduct that violated section 161.001(b)(1)(E) of the family code, we need not consider whether there is legally sufficient evidence he also committed conduct that violated section 161.001(b)(1)(D). *See In re. A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (when there is finding that termination is in child's best interest, finding of only one predicate violation under section 161.001(b)(1) will support termination decree); *In re M.J.P.*, No. 05-16-01293-CV, 2017 WL 655955, at *6 (Tex. App.—Dallas Feb. 17, 2017, no pet.) (mem. op.).

harm." *In re K.L.M.*, No. 05-16-01098-CV, 2017 WL 836850, at *5 (Tex. App.—Dallas Mar. 3 2017, no pet.) (mem. op.). "Rather, 'best interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *Id.* (citing *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (orig. proceeding) (plurality op.)). In reviewing a factfinder's best-interest finding, we consider several nonexclusive factors, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the person seeking custody; (5) the programs available to assist the person seeking custody in promoting the best interest of the child; (6) plans for the child by the person seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (in reviewing a best-interest finding, appellate court "consider[s], among other evidence, the *Holley* factors").

The *Holley* factors focus on the best interest of the child, not the best interest of the parent, *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ), and are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Some of the listed factors may be inapplicable to a case and other factors not on the list may also be considered when appropriate. *Id*. Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest. *Id*.; *D.M.*, 2017 WL 2628949, at *4. On the other hand, the presence of scant evidence relevant to each factor will generally not support such a finding. *In re C.H.*, 89 S.W.3d at 27. Evidence of one of the predicate acts for termination under section 161.001(b)(1) of the family code may also be relevant to determining the best interest of the child. *Id*. at 28.

In this case, the evidence at trial did not address all of the *Holley* factors.[7] However, as to the third, fourth, and eighth factors, which focus on emotional or physical danger to K.B., Father's parental abilities, and any actions indicating an improper parent-child relationship, the evidence established that, immediately after she was born, K.B. was removed from Father's care due to concerns about his and Mother's use of illicit drugs. Father initially refused to submit to drug testing requested by the Department and failed the only drug test to which he submitted during the pendency of the proceedings. A pattern of illegal drug use suggests Father was not willing and able to provide K.B. with a safe environment. *See In re A.C.* 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (concluding that past and ongoing drug use weighed in favor of conclusion that termination of parental rights is in child's best interest); *see also In re O.N.H.*, 401 S.W.3d 681, 684 (Tex. App.—San Antonio 2013, no pet.) ("[I]t is proper to measure a parent's future conduct by his or her past conduct to determine whether termination is in the child's best interest.").

There was also evidence pertaining to the second, sixth, and seventh *Holley* factors regarding the emotional and physical needs of K.B., the Department's plans for K.B., and the stability of the proposed placement. As to these factors, the evidence established Father had not been "forthcoming" with the Department about where he worked or what he did for a living, and had been "reluctant to make a decision between his legal family" and the family he had started with Mother. *See e.g.*, *In re K.L.M.*, 2017 WL 836850, at *6 (parent's failure to comply with service plan may support finding that termination is in best interest of child); *In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (mem. op.) (parent's noncompliance with service plan may be considered by factfinder in determination of child's best interest). Further, we cannot ignore that neither Father nor his current wife, who had been served with a

---

[7] There was no evidence pertaining to the first *Holley* factor, the desires of the child, because K.B. was barely one year old at the time of trial. There was also no evidence of any programs available to assist Father in promoting K.B.'s best interest, the fifth *Holley* factor, or of any excuses for Father's acts of omissions, the ninth *Holley* factor.

subpoena, appeared at trial. *See In re. K.L.M.*, 2017 WL 836850, at \*6. Finally, K.B. was in a stable placement and was doing well. *See In re C.A.W.*, No. 01-16-00719-CV, 2017 WL 3081792, at \*7, 8 (Tex. App.—Houston [1st Dist.] July 20, 2017, no pet. h.) (mem. op.) (considering that child was doing very well in current placement in determining best interest of child).

Based on the evidence presented at trial, we conclude the trial court could have reasonably formed a firm belief or conviction that it was in K.B.'s best interest for Father's parental rights to be terminated.

*Conclusion*

Because the evidence is legally sufficient to support the trial court's findings Father committed conduct in violation of section 161.001(b)(1)(E) of the family code and that termination of Father's parental rights was in K.B.'s best interest, we resolve Father's second and fourth issues against him.

**Ineffective Assistance of Counsel**

In his first issue, Father argues he received ineffective assistance of counsel because his appointed counsel failed to appear at the March 27, 2017 trial setting. The Department agrees Father did not receive effective assistance of counsel. However, the Department's concession of error does not relieve this Court of the obligation to perform its judicial function by independently determining whether the concession is based on sound analysis. *Tex. Farmers Ins. Co. v. Cameron*, 24 S.W.3d 386, 398 n.2 (Tex. App.—Dallas 2000, pet. denied) (concluding stipulation of parties was of no legal effect in determining issue on appeal because parties, "cannot concede a question of law necessary to the proper disposition of an appeal"); *In re M.N.*, No. 04-15-00368-CV, 2015 WL 7563812, at \*3 (Tex. App.—San Antonio Nov. 25, 2015, no pet.) (mem. op.) (noting that, even though the Department agreed parents did not receive

–11–

effective assistance of counsel because appointed counsel failed to appear at trial, appellate court was required to address issue).

In Texas, an indigent parent has a statutory right to appointed counsel in a parental-rights termination case. TEX. FAM. CODE ANN. § 107.013(a)(1) (West 2014); *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). Because it would be a useless gesture to recognize by statute the importance of counsel in termination proceedings yet not require that counsel perform effectively, this statutory right "embodies the right to effective counsel." *In re M.S.*, 115 S.W.3d at 544; *see also In re B.G.*, 317 S.W.3d 250, 253–54 (Tex. 2010). In evaluating claims of ineffective assistance of counsel in a termination case, we apply the two-pronged standard applicable to criminal cases set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *In re J.O.A.*, 283 S.W.3d at 341–42; *In re M.S.*, 115 S.W.3d at 544–45. To show ineffective assistance of counsel under *Strickland*, a parent has the burden to show (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense in a manner so serious as to deny the parent a fair and reliable trial. *In re J.O.A.*, 283 S.W.3d at 342 (citing *In re M.S.*, 115 S.W.3d at 545); *see also Strickland*, 466 U.S. at 687.

"With respect to whether counsel's performance in a particular case is deficient, we must take into account all of the circumstances surrounding the case, and must primarily focus on whether counsel performed in a 'reasonably effective' manner." *In re M.S.*, 115 S.W.3d at 545 (citing *Strickland*, 466 U.S. at 687); *see also In re H.R.M.*, 209 S.W.3d 105, 111 (Tex. 2006). "[C]ounsel's performance falls below acceptable levels of performance when the 'representation is so grossly deficient as to render proceedings fundamentally unfair.'" *In re M.S.*, 115 S.W.3d at 545 (quoting *Brewer v. State*, 649 S.W.2d 628, 630 (Tex. Crim. App. 1983)). In conducting our review of trial counsel's performance, there is "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' including the possibility that counsel's actions are strategic." *Id.* (quoting *Strickland*, 466 U.S. at 689). Only when trial

–12–

counsel's conduct was so outrageous that no competent attorney would have engaged in it will the challenged conduct constitute ineffective assistance. *Id.* The record must affirmatively support a claim that trial counsel provided ineffective assistance. *Lockwood v. Tex. Dep't of Family & Protective Servs.*, No. 03-12-00062-CV, 2012 WL 2383781, at *5 (Tex. App.—Austin June 26, 2012, no pet.) (mem. op.) (citing *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999)). When the record is silent concerning the reasons for trial counsel's actions, we do not engage in speculation to find ineffective assistance of counsel. *P.W. v. Dep't of Family & Protective Servs.*, 403 S.W.3d 471, 476 (Tex. App.—Houston [1st Dist.] 2013, pet. dism'd w.o.j.).

Under *Strickland*'s second prong, a parent must show trial counsel's deficient performance prejudiced his defense. *In re M.S.*, 115 S.W.3d at 545; *see also Strickland*, 466 U.S. at 687. To show prejudice, the parent must show there is reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *In re M.S.*, 115 S.W.3d at 550; *see also Medellin v. Tex. Dep't of Family & Protective Servs.*, No. 03-11-00558-CV, 2012 WL 4466511, at *5 (Tex. App.—Austin Sept. 26, 2012, pet. denied) (mem. op.) (to establish prejudice, father must show "reasonable probability that his parental rights would not have been terminated" absent trial counsel's deficient performance). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome of the proceeding." *P.W.*, 403 S.W.3d at 476; *see also Strickland*, 466 U.S. at 694.

A presumption of prejudice may be warranted, however, in cases where there has been actual or constructive denial of counsel. *United States v. Cronic*, 466 U.S. 648, 658–61 (1984); *Childress v. Johnson*, 103 F.3d 1221, 1228 (5th Cir. 1997). In such a case, "[n]o specific showing of prejudice [is] required," because "the adversary process itself [is] presumptively unreliable." *Cronic*, 466 U.S. at 659; *see also Smith v. Robbins*, 528 U.S. 259, 286–87 (2000) (distinguishing complete denial of counsel on appeal, warranting presumption of prejudice, from

ineffective assistance of counsel on appeal, which does not warrant such presumption). The presumption of prejudice arises when there are "circumstances that are so likely to prejudice the [defendant] that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658. This can occur when (1) the defendant is denied the presence of counsel at a critical stage of his trial, (2) counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, or (3) circumstances at trial are such that, although counsel is available to assist the defendant during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial. *Cronic*, 466 U.S. at 659–60; *see also Bell v. Cone*, 535 U.S. 685, 695–96 (2002).

The differences in the *Strickland* and *Cronic* standards are not of degree, but of kind. *Bell*, 535 U.S. at 697; *In re D.I.,* No. 12-16-00159-CV, 2016 WL 6876503, at *3 (Tex. App.—Tyler Nov. 22, 2016, no pet.) (mem. op.). "In other words, the standards distinguish between shoddy representation and no defense at all." *In re D.I.*, 2016 WL 6876503, at *3; *see also P.W.*, 403 S.W.3d at 477 ("[F]or *Cronic* to apply, counsel's failure to test the prosecution's case 'must be complete.'" (quoting *Bell*, 535 U.S. at 697)). "'[B]ad lawyering, regardless of *how* bad, does not support the . . . presumption of prejudice' under *Cronic*." *Childress*, 103 F.3d at 1229 (quoting *McInerney v. Puckett*, 919 F.2d 350, 353 (5th Cir. 1990)); *see also Maxwell v. Tex. Dep't of Family & Protective Servs.*, No. 03-11-00242-CV, 2012 WL 987787, at *4 (Tex. App.—Austin Mar. 23, 2012, no pet.) (mem. op.). Rather, prejudice is presumed when the defendant can establish counsel was not merely incompetent but inert. *Childress*, 103 F.3d at 1228; *see also In re G.H., Jr.*, No. 12-16-00327-CV, 2017 WL 2464694, at *3 (Tex. App.—Tyler June 7, 2017, pet. filed) (mem. op.).

As to the first prong of the *Strickland* test, Father's attorney did not appear at trial, which was a critical stage of the litigation. *See In re. M.N.*, 2015 WL 7563812, at *3. Consequently,

–14–

Father, who also failed to appear at trial, was not represented by his appointed counsel or anyone else. Father faced the loss of his parental rights to K.B. In the face of such serious potential consequences, there is no plausible strategic reason for trial counsel's failure to appear at a critical stage of litigation and subject the Department's case to appropriate adversarial testing. *See Lockwood*, 2012 WL 2383781, at *6. We conclude Father has shown his trial counsel's performance was deficient. *See In re J.M.O.*, 459 S.W.3d 90, 94 (Tex. App.—San Antonio 2014, no pet.) (concluding parent showed trial counsel's failure to appear at termination trial constituted deficient performance under principles of *Strickland*).

Concerning the second prong of the test, Father has established he was denied counsel at a critical stage of the litigation. Under the principles of *Strickland* and *Cronic*, the record need not establish a specific showing of prejudice because "when appointed counsel wholly fails to appear at trial, the adversary process itself is presumptively unreliable." *In re M.N.*, 2015 WL 7563812, at *3; *see also In re M.R.*, No. 11-13-00029-CV, 2013 WL 3878584, at *8 (Tex. App.—Eastland July 25, 2013, no pet.) (mem. op.) (concluding that because mother "was denied counsel altogether at a critical stage" of termination proceedings, court was required to presume prejudice); *Newsom v. Dep't of Family & Protective Servs.*, No. 01-09-00447-CV, 2010 WL 670568, at *4 (Tex. App.—Houston [1st Dist.] Feb. 25, 2010, no pet.) (mem. op.) ("When an indigent parent claims he was actually or constructively denied counsel in that counsel failed to subject the prosecution's case to meaningful adversarial testing, we apply the test" in *Cronic*.); *Lockwood*, 2012 WL 2383781, at *5–6 (applying presumption of prejudice following trial counsel's failure to appear at trial).

Father has met his burden of establishing he received ineffective assistance of counsel when his lawyer failed to appear at trial. Accordingly, we resolve Father's first issue in his favor, reverse the trial court's judgment terminating Father's parental rights to K.B., and remand this case to the trial court for further proceedings consistent with this opinion. Based on our

–15–

resolution of Father's first issue, we need not address his third, fifth, and sixth issues relating to factual sufficiency of the evidence to support the trial court's findings Father committed two of the statutory grounds for termination, termination of Father's parental rights was in K.B.'s best interest, and the Department should be named K.B.'s managing conservator, respectively. *See* TEX. R. APP. P. 47.1.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

1700428F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF K.B., A CHILD

No. 05-17-00428-CV

On Appeal from the 304th Judicial District Court, Dallas County, Texas,
Trial Court Cause No. JC-16-00365-W.
Opinion delivered by Justice Fillmore, Justices Whitehill and Boatright participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

Judgment entered this 15th day of September, 2017.